# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WARNER BROS. ENTERTAINMENT INC.,**

       Plaintiff,

v.                                                        Case No:  6:14-cv-1294-Orl-37GJK

**STEPHEN WESLEY PHILLIPS d/b/a WWW.EWINGGLOBAL.ORG, WWW.EWINGOIL.NET, WWW.EWINGGOIL.NET, WWW.ZAZZLE.COM/SWPSWP, HTTPS://TWITTER.COM/EWINGOILSTORE, AND WWW.FACEBOOK.COM/EWINGOILCO; AND SWP OMNIMEDIA, INC., d/b/a WWW.EWINGGLOBAL.ORG, WWW.EWINGOIL.NET, WWW.EWINGOIL.NET, WWW.ZAZZLE.COM/SWPSWP, HTTP://TWITTER.COM/IAMSWP,**

       Defendants.

---

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** PLAINTIFF'S AMENDED MOTION FOR FINAL DEFAULT JUDGMENT AND RELATED ORDERS AGAINST DEFENDANTS STEPHEN WESLEY PHILLIPS AND SWP OMNIMEDIA, INC. (Doc. No. 18)
>
> **FILED:** January 16, 2015
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.  BACKGROUND.

On August 12, 2014, Warner Bros. Entertainment Inc. (the "Plaintiff") filed a complaint (the "Complaint") against Stephen Wesley Phillips ("Phillips"), doing business as www.ewingglobal.org, www.ewingoil.org, www.ewingoil.net, www.zazzle.com/swpswp, https://twitter.com/ewingoil.store, and www.facebook.com/ewingoilco; and SWP Omnimedia, Inc. ("Omnimedia") (collectively, the "Defendants"), doing business as www.ewingglobal.org, www.ewingoil.org, www.ewingoil.net, www.zazzle.com/swpswp, and http://twitter.com/iamswp. Doc. No. 1.  In the Complaint, Plaintiff alleges that Defendants are citizens of Tennessee.  Doc. No. 1 at ¶¶ 6-7.  Pursuant to the Federal Trademark Act, 15 U.S.C. § 1051, *et. seq.*, (the "Lanham Act"), Plaintiff asserts federal claims of trademark infringement, false designation of origin and unfair competition, as well as violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A) (the "ACPA").  Doc. No. 1 at ¶¶ 1-3.

In short, Plaintiff alleges that it owns "all rights including all names, characters, logos and related indicia connected with the *Dallas* [television] series," and it is the owner "of world famous registered marks, DALLAS and SOUTHFORK."  Doc. No. 1 at ¶¶ 2-3.  Plaintiff alleges that Defendants, through their various websites, are knowingly marketing, offering for sale, selling, and distributing unauthorized merchandise that infringes upon Plaintiff's trademarks with bad faith intent to profit therefrom.  Doc. No. 1 at ¶¶ 9-11, 16.  Plaintiff further alleges that Defendants are

posting on their websites false and misleading messages, including a banner advertisement, which is likely to cause confusion and to deceive others as to Plaintiff's affiliation with Defendants. Doc. No. 1 at ¶¶ 16-18.  Plaintiff alleges that it has and will continue to suffer damages and irreparable injury because of Defendants' unlawful acts.  Doc. No. 1 at ¶¶ 26-27.  More specifically, Plaintiff alleges that Defendants, through the above-referenced websites, are offering the infringing merchandise for sale, and selling said merchandise, in Florida and in the Middle District of Florida, which will cause the likelihood of confusion, deception, and mistake with respect to Plaintiff's business and/or products in Florida.  Doc. No. 1 at ¶¶ 9-10, 17, 25.  Plaintiff requests statutory damages, injunctive relief, attorneys' fees and costs.  Doc. No. 1 at 12- 16.

On or about August 16, 2014, Plaintiff served Defendants with the summons and a copy of the Complaint in Tennessee.  Doc. Nos. 9-10.  Defendants failed to respond to the Complaint and default was entered against them.  Doc. Nos. 12-14.  On October 8, 2014, Plaintiff filed a Motion for Final Default Judgment and Related Orders Against Defendants (the "Motion").  Doc. Nos. 15-16.  On December 31, 2014, the undersigned entered an order denying the Motion without prejudice.  Doc. No. 17.  In the order, the undersigned noted that Defendants are citizens of Tennessee, the Complaint does not specifically allege that this Court has personal jurisdiction over them, and the Motion failed to contain a memorandum of law demonstrating that the Court may exercise personal jurisdiction over the Defendants.  Doc. No. 17 at 3-4.

On January 16, 2015, Plaintiff filed an Amended Motion For Final Default Judgment And Related Orders Against Defendants (the "Amended Motion").  Doc. Nos. 18-19.  In the Amended Motion, Plaintiff addresses the Court's personal jurisdiction over the Defendants and requests default judgment on its trademark infringement, false designation of origin, and ACPA claims. Doc. No. 19 at 2-20.  In its request for relief, Plaintiff seeks a permanent injunction, pursuant to

15 U.S.C. § 1116, and an award of statutory damages in the amount of $75,000.00, pursuant to 15 U.S.C. § 1117(d).  Doc. No. 19 at 20-25.  Plaintiff has attached a proposed order with respect to the permanent injunction and statutory damages requested.  Doc. No. 19-1 at 2-7.  For the reasons set forth below, it is **RECOMMENDED** that the Court **GRANT** the Amended Motion (Doc. Nos. 18-19) and **ENTER** the proposed order (Doc. No. 19-1 at 2-7).

## II.  ANALYSIS.

### A.  Personal Jurisdiction.

Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a prima facie case of personal jurisdiction over non-resident defendants.  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (plaintiff's burden to allege sufficient facts in complaint to make out prima facie case of personal jurisdiction); *Nationwide Mut. Fire Ins. Co. v. Creation's Own Corp., S.C.*, No. 6:11-cv-1054-Orl-28DAB, 2011 WL 6752561, at *2-3 (M.D. Fla. Nov. 16, 2011) ("in order to enter a default judgment, the Court must find that it has jurisdiction over the parties.").  In order to determine whether the Complaint sets forth a prima facie case for the exercise of personal jurisdiction over the Defendants, the Court must resolve two questions: (1) whether personal jurisdiction over the Defendants arises under Florida's long-arm statute; and (2) whether the exercise of such jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  *Louis Vuitton*, 736 F.3d at 1350 (citing authority).

#### 1.  § 48.193(1)(a)(2), Fla. Stat.

In the Amended Motion, Plaintiff alleges that this Court may exercise specific personal jurisdiction over the Defendants pursuant to Florida's long-arm statute, § 48.193(1)(a)(2), Florida Statutes.  Doc. No. 19 at 7.  Florida's long-arm statute provides personal jurisdiction over any

defendant who "commit[s] a tortious act within this state." Flat. Stat. § 48.193(1)(a)(2). In *Louis Vuitton*, 736 F.3d at 1353, the Eleventh Circuit concluded that trademark infringement claims constitute "'tortious acts' for purposes of Florida's long-arm statute." *Id*. The Eleventh Circuit explained: "a nonresident defendant commits a tortious act within [Florida] when he commits an act outside the state that causes injury within Florida." *Id*. at 1353 (internal quotations omitted and citing authority). The act of trademark infringement through a nonresident defendant's website "causes injury and occurs in Florida 'by virtue of the website's accessibility in Florida.'" *Id*. at 1354 (quoting *Licciardello v Lovelady*, 544 F.3d 1280, 1283 (11th Cir. Oct. 2008)). In *Louis Vuitton*, 736 F.3d at 1354, the Eleventh Circuit further determined that tortious acts are committed within Florida, for purposes of the long-arm statute, when "infringing products and goods" are sold into the state and the particular judicial district. *Id*.

In this case, the Complaint alleges that Defendants are offering, selling, and distributing infringing goods nationwide, in Florida, and in the Middle District of Florida through interactive websites. Doc. No. 1 at ¶ 10. By making the infringing merchandise accessible through websites in Florida and by selling the infringing merchandise to consumers in Florida and in this judicial district, Defendants have committed a tortious act within this state and, therefore, their conduct brings them within the auspices of Section 48.193(1)(a)(2). *See Louis Vuitton*, 736 F.3d at 1353-54; *Dish Network, L.L.C., v. TV Net Solutions, LLC*, No. 6:12-cv-1629-Orl-41TBS, 2014 WL 6685366, at *3 (M.D. Fla. Oct. 10, 2014).

   2. **Due Process.**

As set forth in *Louis Vuitton*, 736 F.3d at 1355, there is a three-part test for determining whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474–75, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *see also Oldfield*, 558 F.3d at 1220–21; *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630–31 (11th Cir. 1996).

*Id.* With respect to the first test, whether the Plaintiff's claims arise out of Defendants' contacts with Florida, the allegations of the Complaint demonstrate that Defendants' contacts with Florida involve offering for sale, selling, and shipping infringing merchandise into Florida and this judicial district. Doc. No. 1 at ¶ 10. Thus, there is a direct link between Defendants, Florida, and Plaintiff's trademark infringement claims. *See Louis Vuitton*, 736 F.3d at 1355-56.

With respect to whether the Defendants purposefully availed themselves of the privilege of conducting activities within Florida, where the plaintiff is also a non-resident of the forum, as is the case here, Courts may apply the "traditional purposeful availment analysis," as set forth in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). *Louis Vuitton*, 736 F.3d at 1356-57 (explaining the differences between the "effects test" and "traditional purposeful availment test"). Here, the unrebutted allegations in the Complaint and the attachments thereto, demonstrate the Defendants purposefully availed themselves of the privilege of conducting activities in Florida in such a manner that they may reasonably anticipate being haled into a Florida court. *See* Doc. Nos. 1 at ¶ 9-10; 1-3; 1-4; 1-5 at 1-3. Defendants advertised their infringing products for sale on websites accessible in Florida, received orders from at least one Florida consumer, and shipped infringing merchandise to Florida. *Id.* Similar to the facts in *Louis Vuitton*, 736 F.3d at 1357,

"[t]hese collective contacts establish that [Defendants] purposefully availed [themselves] of the privileges of doing business in . . . Florida." *Id*.

Finally, with respect to whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, it is the Defendants that chose to sell infringing merchandise in Florida, thereby triggering Florida's strong interest in protecting its consumers against the consumer confusion caused by such misconduct. Moreover, as set forth in *Keeton*, 465 U.S. at 779, there is no requirement that a plaintiff have *any* minimum contacts with the forum. Thus, Defendants may be sued in Florida without offending the Due Process Clause of the Fourteenth Amendment. *See Louis Vuitton*, 736 F.3d at 1358.

Based on the forgoing, it is **RECOMMENDED** that the Court find that Plaintiff has pled prima facie allegations warranting the exercise of personal jurisdiction over the Defendants.

**B. Default Judgment.**

A default judgment has the effect of establishing as fact the plaintiff's well-pled allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 39, 361 (11th Cir. 1987); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Defendants have admitted all well-pled allegations of the Complaint by virtue of their default. These well-pled allegations include admitting that: Plaintiff's productions include the original *Dallas* television series from 1978 through 1991, as well as the current *Dallas* production beginning in 2012 (Doc. No. 1 at ¶¶ 5A-B); Plaintiff owns all rights connected with the *Dallas* series, including the fictional characters, companies and families (*Id*.); Plaintiff owns all rights to unregistered trademarks related to *Dallas*, including "Ewing Oil," "J.R. Ewing," "Ewing," Bobby Ewing," "Miss Ellie," and "Jock" (Doc. No. 1 at ¶ 5B); Plaintiff exclusively owns the DALLAS and SOUTHFORK registered trademarks (Doc. Nos. 1 at ¶ 5C; 1-2 at 2-8); Plaintiff

licenses and merchandises products featuring the Plaintiff's registered and unregistered trademarks (hereinafter, the "Plaintiff's Properties"); Plaintiff has conducted substantial advertising and marketing connected with *Dallas* from 1978 through the present and, as a result, the Plaintiff's Properties are well-known and widely accepted by the public (Doc. No. 1 at ¶¶ 5D-E); Plaintiff's Properties "are inherently distinctive and serve to identify [Plaintiff] . . . as the source of products bearing [Plaintiff's Properties]," and they "constitute famous marks and have each acquired secondary meaning in the minds of consumers throughout the United States and the World" (Doc. No. 1 at ¶ 5D); Defendants have, without authorization, utilized various websites, online stores, and social networking pages to advertise, market, offer for sale and sell reproduced merchandise which infringes upon Plaintiff's Properties (Doc. Nos. 1 at ¶¶ 6-7, 9-11; 1-3; 1-4; 1-5; 1-6); Plaintiff has made written demand that Defendants cease and desist their infringing conduct, but Plaintiff's demand has been ignored (Doc. No. 1 at ¶¶ 13-15); Defendants use of Plaintiff's Properties in advertising, marketing and selling the infringing products will likely cause confusion, mistake, and deceive consumers (Doc. No. 1 at ¶ 17-18); and Defendants' actions have been taken intentionally, with the bad faith intent to profit from their infringing use (Doc. No. 1 at ¶¶ 16, 19-20).[1]   As such, by virtue of their default, Defendants have not only admitted they infringed upon Plaintiff's Properties, but they have also admitted that they did so intentionally. *See All-Star Mktg. Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y 2011) (indicating that by virtue of a default, a defendant is deemed a willful infringer).

---

[1] The websites, online stores, and social networking pages are as follows: www.ewingglobal.org; www.ewingoil.org; www.ewingoil.net;  www.zazzle.com/swpswp;  https://twitter.com/ewingoilstore;  www.facebook.com/ewingoilco. Doc. No. 1 at ¶¶ 6-11; 16.

## C. Claims for Relief.

To prevail on a claim for trademark infringement, Plaintiff must show it has a valid mark, Defendants used the mark in commerce in connection with selling or advertising goods and Defendant's actions are likely to cause confusion. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). Plaintiff has demonstrated through the well-pled allegations in the Complaint, the documents attached thereto, including the federal trademark registrations, that it owns and has priority to the DALLAS and SOUTHFORK word marks, that Defendants have used the marks, without authorization, in connection with the sale, advertising, marketing, and offering for sale of reproduced infringing merchandise through various websites, online stores, and social networking pages, and that said use has likely caused consumer confusion. Doc. Nos. 1; 1-2; 1-3; 1-4; 1-5. Thus, pursuant to 15 U.S.C. § 1114(a), it is recommended that the Court find that Plaintiff has pled sufficient facts supporting its claim for trademark infringement against Defendants.

As to Plaintiff's claims for false designation of origin and unfair competition, pursuant to 15 U.S.C. § 1125(a), the same set of facts which permit Plaintiff to prevail on its claims for trademark infringement also result in Plaintiff prevailing under Section 1125. *See Babbit Electronics, Inc. v. Dynascan Corporation*, 38 F.3d 1161, 1181 (11th Cir. 1994) (holding that because Section 1125(a) is broader than Section 1114, the same set of facts which allow a plaintiff to prevail on a trademark infringement claim will permit a plaintiff to recover for a false designation of origin and unfair competition claim). Accordingly, it is **RECOMMENDED** that the Court find that Plaintiff has pled sufficient facts supporting its claim for false designation of origin and unfair competition against the Defendants.

To prevail on a claim arising under the ACPA, 15 U.S.C. § 1125(d)(1), Plaintiff must demonstrate that:

> (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001).

*Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. Oct. 2, 2006) (unpublished).[2]  In this case, Plaintiff has alleged that "Ewing Oil," as well as its other unregistered marks, are inherently distinctive and famous. Doc. No. 1 at ¶¶ 5A through D.  Section 1125(c)(2)(A) provides that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." Id.  In making this determination, the Court may consider: the duration, geographic reach, and publicity of the mark; the extent of actual recognition of the mark; the extent of sales of goods or services offered under the mark; and whether the mark was registered.  15 U.S.C. § 1125(c)(2)(A)(i)-(iv).  While there is no evidence as to the volume of sales of goods Plaintiff has made under the marks at issue and Ewing Oil, as well as many of the other marks at issue, were not registered, Plaintiff has clearly demonstrated that its marks have had worldwide reach since 1978 and remain well-known today. Doc. No. 1 at ¶¶ 5A through D.  In addition, Plaintiff has demonstrated that its unregistered marks associated with *Dallas*, including "Ewing Oil", have acquired secondary meaning in the minds of consumers, and are entitled to protection. Doc. Nos. 1 at ¶¶ 5A through D.  Defendants' domain names www.ewingoil.org, www.ewingoil.net, and www.ewingglobal.org are identical and/or confusingly similar to Plaintiff's "Ewing Oil" and "Ewing" trademarks. *Id*.

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th R. 36-2.

As to the third element, Section 15 U.S.C. § 1125(d)(1)(B) provides that a court may consider the following non-exclusive list of factors:

> (I) the trademark or other intellectual property rights of the [defendant], if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). Section 1125(d)(1)(B)(ii) also provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *Id*.

As to the first five factors outlined above, the undersigned finds that the Complaint establishes that the "Ewing Oil" and "Ewing" marks have been famous since 1978 because the *Dallas* series is "one of the longest lasting full hour prime time dramas ever produced in American television history," and Plaintiff has "never at any time authorized Defendants" to utilize any of Plaintiff's marks in the advertising, promoting, or selling of merchandise. Doc. No. 1 at ¶¶ 5B, 12-13. *See also supra* p. 10 (discussing requirements for famous mark). By virtue of their default, Defendants have admitted that they used the domain names at issue with the bad faith intent to profit from their misconduct. Doc. No. 1 at ¶ 16. Defendants have no bona fide noncommercial or fair use of the marks in their domain names. It requires a "quantum leap of imagination" to believe that a user of the internet accessing the Defendants' domain names at issue would not associate them with Plaintiff's famous marks. *See Victoria's Cyber Secret LTD. P'Ship v. Secret Catalogue, Inc*., 161 F. Supp. 2d 1339, 1347 (S.D. Fla. 2001) (finding that an internet user would likely associate the domain names at issue with Victoria's Secret, a famous trademark). Thus, it is **RECOMMENDED** that the Court find with respect to the first five factors listed above, Plaintiff has demonstrated Defendants' bad faith intent to profit from the Plaintiff's unregistered marks.

With respect to the sixth and seventh factors, Plaintiff acknowledges that it has no information supporting these factors, but Plaintiff argues that, since Defendants moved their domain names to an internet service provider located in the Netherlands after Defendants received Plaintiff's cease and desist letter (Doc. No. 1 at ¶ 14), those factors weigh in favor of finding bad

faith. Doc. No. 19 at 19. Because Plaintiff has not alleged or provided evidence supporting these factors, it is **RECOMMENDED** that the Court find that the sixth and seventh factors do not support a finding of bad faith intent to profit from Plaintiff's unregistered trademarks.

As to the eighth and ninth factors, Defendants have utilized domain names that are confusingly similar to Plaintiff's unregistered trademarks and Defendants continue to promote the infringing merchandise on the websites despite being informed of infringement. Doc. No. 1 at ¶¶ 13, 15. Accordingly, it is **RECOMMENDED** that the Court find that the eighth and ninth factors support a finding of bad faith intent to profit from Plaintiff's "Ewing Oil" and "Ewing" unregistered trademarks.

As set forth above, Section 1125(d)(1)(B)(ii) provides that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). There has been no showing of any reasonable belief that the Defendants' use of the domain names was a fair use or otherwise lawful. Based on Defendants' conduct, after considering all of the factors outlined in 15 U.S.C. § 1125(d)(1)(B), it is **RECOMMENDED** that the Court find that Plaintiff has sufficiently pled and demonstrated Defendants' bad faith intent to profit from Plaintiff's unregistered trademarks.

Plaintiff requests statutory damages in the amount of $75,000.00, or $25,000.00 per domain name, under the ACPA. Doc. No. 19 at 23-25. Plaintiff is entitled to an award of statutory damages not less than $1,000.00 and not more than $100,000.00 per domain name "as the court considers just." 15 U.S.C. § 1117(d). Section 1117(d) damages are appropriate even in cases were the marks used in the domain names are unregistered. *See Media Lab, Inc. v. Collis*, 2010 WL 3893582, *5-6 (N.D. Cal. Sept. 30, 2010) (awarding $50,000.00 in statutory damages per domain

name that was identical or confusingly similar to unregistered trademarks). In this case, Defendants utilized Plaintiff's famous marks in three domain names with the bad faith intent to profit therefrom by selling merchandise, which also infringed upon Plaintiff's marks. Based on Defendants' conduct, the undersigned finds that an award of $25,000.00 per domain name is justified. Accordingly, pursuant to 15 U.S.C. § 1117(d), it is **RECOMMENDED** that the Court award statutory damages in the total of amount of $75,000.00.

### D. Permanent Injunction.

Plaintiff also requests a permanent injunction. Doc. No. 19 at 20-23. 15 U.S.C. § 1116(a) permits a court to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable." *Id*. The Eleventh Circuit has indicated that the four factor test set forth in *Ebay Inc. v. Mercexchange, LLC*, 547 U.S. 338 (2006), must be applied in determining whether injunctive relief is warranted. *See Axiom Worldwide, Inc.*, 522 F.3d at 1227-28. As explained in *Ebay Inc.*, 547 U.S. at 391, a plaintiff must establish the following four elements to be entitled to a permanent injunction: "(1) irreparable harm; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." *Id*.

In this case, the elements necessary for the issuance of a permanent injunction are met. Through its well-pled allegations in the Complaint, Plaintiff has demonstrated that without an injunction, Defendants' acts of infringement will continue, which will further damage Plaintiff and confuse the public. Doc. No. 1 at ¶¶ 25-26. Balancing the hardships the parties are facing depending on whether or not an injunction is granted clearly favors granting an injunction and the public interest will be served by the issuance of an injunction. In trademark infringement actions,

injunctive relief is often appropriate because: 1) "there is no adequate remedy at law to redress infringement and [2)] infringement <u>by its nature</u> causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (citing *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)).  Further, courts have generally recognized that in such cases, the public interest is "paramount." *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991).  Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id*. (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).  Accordingly, it is **RECOMMENDED** that the Court find that Plaintiff is entitled to a permanent injunction.

Section 1125(d)(1)(C) provides that "[i]n any case involving the . . . use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *Id*.  In the Amended Motion, Plaintiff requests that, as a part of the permanent injunction, the Court order Defendants to transfer the domain names www.ewingglobal.org, www.ewingoil.org, www.ewingoil.net  to Plaintiff within thirty (30) days.  Doc. No. 19 at 22-23.  Pursuant to Section 1125(d)(1)(C), it is **RECOMMENDED** that the Court order Defendants to transfer the domain names at issue to Plaintiff within thirty (30) days.

Plaintiff has submitted a proposed permanent injunction, damages award, and related orders.  Doc. No. 19-1.  With the exception of the last page, which reads: "[T]he Parties waive appeal of this Permanent Injunction and Final Order"; the proposed order is consistent with the undersigned's report and it is **RECOMMENDED** that the Court issue the proposed order (Doc. No. 19-1).

**III.    CONCLUSION.**

Based on the forgoing, it is **RECOMMENDED** that the Court:

1. **GRANT** the Motion (Doc. Nos. 18-19) and enter a default judgment against the Defendants;

2. Award Plaintiff $75,000.00 in statutory damages jointly and severally against the Defendants pursuant to 15 U.S.C. § 1117(d);

3. Enter a permanent injunction against Defendants consistent with the proposed order (Doc. No. 19-1), with the exception of the statement on the last page waiving appeal rights; and

4. Retain jurisdiction over the case for sixty (60) days to ensure compliance with the permanent injunction.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE and ORDERED** in Orlando, Florida on April 30, 2015.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy